STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT COURT

LLOYD TAFOYA, as Personal Representative
of the Wrongful Death Estate of
KATHERINE HERRERA, deceased;
NICOLAS LEGER, as Personal Representative
of the Wrongful Death Estate of
SAMUEL HERRERA, deceased;
RACHEL HERRERA, DANIEL HERRERA, LOGAN HERRERA,
JUANITA DUNLAP and GEORGE DUNLAP,

       Plaintiffs,

vs.                      No.: D412CV201600190

NEW PRIME, INC.; JEREMY SCUDDER;
and NEW MEXICO DEPARTMENT OF
TRANSPORTATION,

       Defendants.

## COMPLAINT FOR PERSONAL INJURY, WRONGFUL DEATH, AND LOSS OF CONSORTIUM

For their complaint against the defendants, the plaintiffs allege as follows:

## NATURE OF THE CASE

1.     This is an action to recover damages arising from the senseless and needless deaths of Katie and Sam Herrera on December 28, 2015.

## INTRODUCTION

2.     The afternoon of December 28, 2015, a New Prime, Inc. commercial driver, Jeremy Scudder, drove New Prime, Inc.'s tractor-trailer directly into the back of Katie and Sam Herrera's Honda Accord with enough force to crush the car entirely underneath another tractor-trailer in front of them. Katie and Sam suffered catastrophic injuries in the crash and died



EXHIBIT
A

at the scene.  When the New Prime, Inc. driver rear-ended them, the Herreras had safely slowed their vehicle along with other traffic that was exiting Interstate 40 at Exit 277 coming into Santa Rosa, New Mexico.  Although the Herreras' Accord was in plain sight to any driver approaching on the unobstructed stretch of interstate leading up to Exit 277, the New Prime, Inc. driver admitted at the scene that he did not know he was about to crush Katie and Sam's vehicle until a collision warning system alarmed 1.5 seconds before he hit and killed them.

3.      Katie was a 24-year-old elementary school music teacher, and Sam was a 25-year-old paramedic and emergency room technician.  They had been married six months when New Prime, Inc.'s negligent, willful, reckless, and wanton conduct ended their lives.  Both graduates of Albuquerque's Rio Grande High School, they were traveling back to Arlington, Texas after spending the Christmas holiday at home with their families in New Mexico.

4.      Through this action, the plaintiffs seek to recover damages for the catastrophic injuries Katie and Sam suffered and for their deaths from New Prime, Inc., both directly and based on the corporation's legal responsibility for Scudder's actions.  The plaintiffs additionally seek to hold Scudder directly accountable for the crash.

5.      The plaintiffs seek to recover from the New Mexico Department of Transportation ("NMDOT") for negligence in maintaining Interstate 40 that contributed to Katie and Sam's deaths.  Traffic had slowed and backed up where the crash occurred because NMDOT left signs activated that wrongly told the traveling public that Interstate 40 was closed and that all eastbound vehicles had to exit at Exit 277 when, in fact, the interstate was open.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Lloyd Tafoya, the Personal Representative of the Wrongful Death Estate of Katherine Herrera, is a resident of San Miguel County, State of New Mexico.  In conjunction

with filing this complaint, Mr. Tafoya requests that this Court appoint and confirm him as the Personal Representative of the Wrongful Death Estate of Katherine Herrera pursuant to the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-3.

7.      Plaintiff Nicolas Leger, the Personal Representative of the Wrongful Death Estate of Samuel Herrera, is a resident of San Miguel County, State of New Mexico.  In conjunction with filing this complaint, Mr. Leger requests that this Court appoint and confirm him as the Personal Representative of the Wrongful Death Estate of Samuel Herrera pursuant to the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-3.

8.      Plaintiff Rachel Herrera, Sam's mother, is a resident of Bernalillo County, State of New Mexico.

9.      Plaintiff Daniel Herrera, Sam's father, is a resident of Valencia County, State of New Mexico.

10.     Plaintiff Logan Herrera, Sam's brother, is a resident of Bernalillo County, State of New Mexico.

11.     Plaintiff Juanita Dunlap, Katie Herrera's mother, is a resident of Bernalillo County, State of New Mexico.

12.     Plaintiff George Dunlap, Katie Herrera's father, is a resident of Bernalillo County, State of New Mexico.

13.     Defendant New Prime, Inc. is a Nebraska corporation doing business in and traveling over the highways of the State of New Mexico.

14.     At all times relevant to this case, New Prime, Inc. was a motor carrier operating under the authority of the Federal Motor Carrier Safety Administration with United States Department of Transportation permit number 003706.

15.     Defendant NMDOT is an arm and alter ego of the State of New Mexico.

16.     This Court has jurisdiction over the plaintiffs' claims pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, § 38-1-16.  The Court has exclusive original jurisdiction over the action pursuant to NMSA 1978, § 41-4-18, and the case is not subject to federal diversity jurisdiction.

17.     Venue in San Miguel County is proper pursuant to NMSA 1978, § 38-3-1(A) and (F), and NMSA 1978, § 41-4-18(B).

## FACTUAL BACKGROUND

18.     During all times relevant to this case, New Prime, Inc. was the owner of, and motor carrier operating, the tractor-trailer the company assigned to Jeremy Scudder.  Scudder operated the tractor-trailer under New Prime, Inc.'s full direction and control.

19.     New Prime, Inc. plainly identified itself as the owner and operator of the tractor-trailer by prominently displaying both the company's name and United States Department of Transportation permit number on the vehicle.  New Prime, Inc. remained at all times responsible for safe operation of the tractor-trailer and is responsible as a matter of law for Scudder's conduct in operating it.

20.     On December 26, 2015, New Prime, Inc. sent Scudder to drive a load of metal coils on a flatbed trailer from California at least as far east as Texas.  Once loaded, the New Prime, Inc. tractor-trailer weighed more than 71,000 lbs.

21.     By the afternoon of December 28, 2015, Scudder was driving across New Mexico eastbound on Interstate 40.   He approached Santa Rosa shortly after 3:30 p.m. traveling on clear and dry roads with clear skies and good weather.

22.     Traffic in front of Scudder had slowed approaching Santa Rosa as a result of a NMDOT sign with flashing lights notifying eastbound drivers that the interstate was closed ahead and instructing them to exit at Exit 277.

23.     Interstate 40 was not closed at that time and eastbound drivers were not required to exit the interstate.  On information and belief, NMDOT turned on the sign the night before when the interstate temporarily was closed but failed to turn the sign off after the interstate reopened the morning of December 28, 2015.  NMDOT records confirm that all lanes of Interstate 40 had been continuously open from west of Santa Rosa through the Texas state line since no later than 9:00 a.m. on December 28, 2015.

24.     Drivers in front of Scudder who were paying appropriate attention safely slowed down and exited the interstate at Exit 277 or continued eastbound on Interstate 40.

25.     Scudder failed to do the same.  By his own account, Scudder thought traffic was looking "good" and turned his attention away from what was happening on the roadway in front of him.  After the crash, he told the New Mexico State Police that he had his cruise control set at 65 miles per hour and heard his collision warning sensor go off 1.5 seconds before he crashed into Katie and Sam Herrera.  Scudder's only explanation for failing to see the Herreras and slow down is that he was doing a "mirror check."

26.     Had he been paying attention to the roadway, Scudder would have seen a tractor-trailer in front of Katie and Sam engage its emergency flashing lights as it slowed

approaching Exit 277, and Katie engage the brake lights on the Herreras' Accord as she slowed as well.

27.     Data downloaded from an electronic control module for the Herreras' Accord confirms that Katie had safely slowed the vehicle with traffic to approximately 11 miles per hour before Scudder struck and killed Sam and her.

28.     Video from a security camera at a nearby TA truck stop captured the crash.  The video shows traffic, including the Herreras and the tractor-trailer in front of them, slowing at the approach to Exit 277.  Seconds later, Scudder enters the frame of the video in his New Prime, Inc. tractor-trailer at a high rate of speed.  His tractor-trailer shows no sign of stopping until it crushed the Herreras' Accord under the tractor-trailer in front of them and itself collided with that tractor-trailer.

29.     Katie and Sam suffered traumatic injuries during the crash that foreclosed any chance of survival.  Both were declared dead at the scene.

30.     Scudder walked away from the crash with a few minor scratches, was evaluated by emergency medical personnel, and refused medical transport to a hospital.  He spent the night following the crash at a hotel in Santa Rosa.

31.     The New Mexico State Police cited Scudder for careless driving based on his conduct in causing the crash.

32.     Although New Prime, Inc. was required by Federal Motor Carrier Safety Administration regulations to conduct a timely alcohol test of Scudder following the crash, it failed to secure a test within the required time period.  As a result, there is no way to confirm whether Scudder was impaired by alcohol.

33.     New Prime, Inc. began assigning Scudder routes without requiring him to

complete the driver's school and related training it normally requires for new drivers.

34.     New Prime, Inc. hired Scudder and entrusted him to operate its tractor-trailers despite a documented history of citations, crashes, and speeding infractions.  By July 23, 2015 -- a week after he was first hired, Scudder was reported for causing property damage with a New Prime, Inc. tractor-trailer.  Six days later, on July 29, 2015, Scudder was cited for speeding and was written up for problems with his trailer and tires.  On September 15, 2015, Scudder violated sleeping restrictions for commercial drivers.  On November 30, 2015, less than a month before crashing into the Herreras, Scudder was involved in another crash in Washington State.

35.     Despite these and other clear, documented warnings that Scudder could not safely operate a tractor-trailer, New Prime, Inc. continued assigning him routes.  Scudder only was driving through New Mexico on December 28, 2015 as a result of New Prime, Inc.'s reckless failures to (a) screen his background before hiring him, (b) train him, (c) supervise him, and (d) monitor his fitness to operate a tractor-trailer in interstate travel.

36.     As a direct and proximate result of the negligence and omissions of the defendants, the Wrongful Death Estate of Katherine Herrera and the Wrongful Death Estate of Samuel Herrera have suffered damages including, but not limited to, the value of their lives, their pain and suffering, funeral and burial expenses, lost income, property damage and all other damages allowable under the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-3.

37.     As a direct and proximate result of the negligence and omissions of the defendants, the individually named plaintiffs have each suffered emotional distress due to the loss of society, guidance, and companionship of Katie and Sam Herrera and are, therefore, entitled to recover damages for loss of consortium.

## COUNT I:  NEGLIGENCE AND NEGLIGENCE PER SE
## OF SCUDDER AND NEW PRIME, INC.

38.     Plaintiffs incorporate by reference the foregoing allegations.

39.     Jeremy Scudder owed the plaintiffs a duty of care to operate the New Prime, Inc.

tractor-trailer he was operating at the time of the crash in a safe manner and in compliance with

all safety rules, including statutes, regulations, and ordinances governing the operation and

maintenance of vehicles upon interstate and New Mexico roadways.

40.     Scudder breached his duty of care by, among other things:

       a.     Failing to keep a proper lookout, including by failing to see what was in

plain sight and obviously apparent to someone under like or similar circumstances, and, with

respect to that which was not in plain sight or readily apparent, by failing to appreciate and

realize what was reasonably indicated by that which was in plain sight;

       b.     Failing to exercise due care in the operation and maintenance of the New

Prime, Inc. tractor-trailer he was operating;

       c.     Failing to operate the New Prime, Inc. tractor-trailer in a safe and

reasonable manner and under control in light of the circumstances;

       d.     Operating the New Prime, Inc. tractor-trailer in violation of existing

statutes, regulations, codes, ordinances and legal rules;

       e.     Operating the New Prime, Inc. tractor-trailer while inattentive to other

vehicles and roadway conditions;

       f.     Following more closely than is reasonable and prudent, having due regard

for the speed of other vehicles and the traffic upon and condition of the highway;

       g.     Following more closely than permitted for motor vehicles pulling a trailer;

h.    Driving carelessly, including through the failure to give his full time and entire attention to the operation of the New Prime, Inc. tractor-trailer, and operating the tractor-trailer in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather and road conditions and all other attendant circumstances;

i.    Becoming distracted while driving;

j.    Operating the New Prime, Inc. tractor-trailer while overly fatigued;

k.    Violating statutes, regulations, codes, and ordinances; and

l.    Otherwise acting without the reasonable care required of him under the circumstances.

41.    Scudder's breach of these duties caused injuries to, and the deaths of, Katie and Sam Herrera.

42.    Scudder's breach of duty was a direct and proximate cause of Katie and Sam Herrera's injuries and death.

43.    Scudder was New Prime, Inc.'s statutory employee, employee-in-fact, and agent at the time of the crash.  Scudder was operating New Prime, Inc.'s tractor-trailer in the course and scope of his employment with the corporation at the time of the crash, and New Prime, Inc. otherwise authorized, participated in, and ratified his conduct.  New Prime, Inc. is liable for the damages caused by any and all of Scudder's wrongful acts and omissions related to Katie and Sam's deaths.

44.    New Prime, Inc. additionally owed Plaintiffs a duty of care to, among other things:

a.    Properly screen Scudder before hiring him and putting him on the roadway operating New Prime, Inc.'s tractor-trailer;

b.      Properly train Scudder;

c.      Properly monitor Scudder;

d.      Properly supervise Scudder;

e.      Comply with all federal and state statutes, regulations, codes, ordinances, and legal rules; and

f.      Otherwise act with the reasonable care required of it under the circumstances.

45.     New Prime, Inc. breached its duties.

46.     New Prime, Inc.'s breach of duty was a direct and proximate cause of Katie and Sam Herrera's injuries and deaths.

47.     New Prime, Inc. and Scudder's acts and omissions in causing Katie and Sam Herrera's injuries and deaths were reckless, willful, and wanton. These defendants therefore should be held responsible for punitive damages beyond the other damages set out herein.

WHEREFORE, the plaintiffs pray for judgment against Scudder and New Prime, Inc. for their damages, including compensatory and punitive damages, pre-judgment and post-judgment interest at the legal rate, for their costs, and for such other and further relief to which they may be entitled under the facts and circumstances.

## COUNT II:  NEGLIGENT MAINTENANCE BY NMDOT

48.     Plaintiffs incorporate by reference the foregoing allegations.

49.     NMDOT has a duty to use reasonable care in the maintenance of Interstate 40 and all exits from the interstate in and around Santa Rosa, New Mexico.

50.     NMDOT breached that duty to the plaintiffs.

51.     NMDOT's breach of that duty was a contributing cause to the injuries and deaths

of Katie and Sam Herrera.

52.    The plaintiffs have suffered damages as a result of NMDOT's breach of duty.

53.    NMDOT is liable for such damages under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-11.

54.    The plaintiffs timely put NMDOT on notice of their claims pursuant to NMSA 1978, § 41-4-16 by letter dated February 22, 2016.  The state confirmed receipt of that notice through a letter from its agent dated March 25, 2016.

WHEREFORE, the plaintiffs pray for judgment against NMDOT for their damages, for interest to the full extent permitted by law, for their costs, and for such other and further relief to which they may be entitled under the facts and circumstances.

## COUNT III:  LOSS OF CONSORTIUM

55.    Plaintiffs incorporate by reference the foregoing allegations.

56.    Plaintiffs Rachel Herrera, Daniel Herrera, Logan Herrera, Juanita Dunlap, and George Dunlap are Katie and Sam Herrera's parents and siblings.

57.    Each of these plaintiffs had an intimate familial relationship with Katie and Sam, were mutually dependent with them, and cannot enjoy life in the same way now that their relationships with Katie and Sam have been severed.

58.    The defendants' conduct has forever deprived these plaintiffs of Katie and Sam's affection, society and companionship.

59.    It was reasonably foreseeable to the defendants that, by causing Katie and Sam's deaths, they would damage the relationships these plaintiffs had with the children and siblings the defendants took from them.

11

WHEREFORE, Plaintiffs Rachel Herrera, Daniel Herrera, Logan Herrera, Juanita Dunlap, and George Dunlap pray for judgment against each of the defendants for their damages, including for the emotional distress, lost earnings, and expenses caused by the loss of society, guidance, and companionship with Katie and Sam Herrera, for interest to the full extent permitted by law, for their costs, and for such other and further relief to which they may be entitled under the facts and circumstances.

Respectfully submitted,

PEIFER, HANSON & MULLINS, P.A.

By: /s/ Mark T. Baker
        Mark Travis Baker
20 First Plaza, Suite 725
Albuquerque, New Mexico 87102
Telephone: (505) 247-4800

*Attorneys for Plaintiffs*